UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB D. AGUILERA,                          Case No. 17-13214

     Plaintiff,                          David M. Lawson
v.                                          United States District Judge

COMMISSIONER OF SOCIAL                      Stephanie Dawkins Davis
SECURITY,                                   United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 18)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On October 2, 2017, plaintiff Jacob D. Aguilera, filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

David M. Lawson referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying Aguilera's claim for

disability benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 15, 18).  Aguilera also filed a reply in support of his

motion for summary judgment.  (Dkt. 19).

B.    Administrative Proceedings

Aguilera filed an application for a supplemental security income on September 9, 2014, alleging disability beginning on September 1, 1996.  (Tr. 20).[1] The claims were initially disapproved by the Commissioner on January 28, 2015. (Tr. 20).  Aguilera requested a hearing and on June 1, 2016, he appeared with counsel before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered the case *de novo*.  (Tr. 36-52).  In a decision dated July 7, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 17-32).  Aguilera requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on August 1, 2017, denied plaintiff's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

Aguilera was born in 1977 and was 37 years old on the application date. (Tr. 30).  He did not complete high school and lives with his mother.  (Tr. 166, 277, 347).  He has no past relevant work experience.  (Tr. 30).  Aguilera's application is based on his claims that his ADHD, depression, asthma, and diabetes impair his ability to work.  (Tr. 28; 141).  Aguilera's claim is primarily based on his mental impairments, but he does indicate in his Adult Function report that he can only lift light weights, that his conditions affected his ability to walk, bend, and sit and that his chronic ankle arthritis caused him problems.  (Tr. 147-154).  It appears that Aguilera was previously awarded benefits in 1997 for his ADHD and obesity.  (Tr. 56).  It is not clear when or why those benefits ended.

The ALJ applied the five-step disability analysis and found at step one that Aguilera had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 22).  The ALJ found that Aguilera has the following severe impairments: affective disorders and anxiety disorder.  (Tr. 22).  The ALJ concluded that Aguilera's back pain, hypertension, mild motor neuropathy, mild carpal tunnel syndrome, headache, hip pain, asthma, diabetes mellitus, calcaneal spur, and hypothyroidism were not severe impairments.  (Tr. 25).  At step three, the ALJ found that Aguilera did not have any impairment or combination of impairments that meets or medically equals the Listings.  (Tr. 25).  At step four, the ALJ found

that Aguilera has no past relevant work.  (Tr. 30).  At step five, the ALJ concluded

that considering Aguilera's age, education, work experience, and RFC, there are

jobs that exist in significant numbers in the national economy that he can perform

and thus, he is not disabled.  (Tr. 30-31).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).
Title II benefits are available to qualifying wage earners who become disabled
prior to the expiration of their insured status; Title XVI benefits are available to
poverty-stricken adults and children who become disabled.  F. Bloch, Federal
Disability Law and Practice § 1.1 (1984).  While the two programs have different
eligibility requirements, "DIB and SSI are available only for those who have a
'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"
means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the claimant is engaged in significant gainful activity; (2) the claimant has any severe impairment(s); (3) claimant's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the he can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Parties' Arguments

Aguilera contends that the ALJ erred when he failed to find that he had any severe physical impairments. Aguilera points out that Dr. Hussain, who saw plaintiff on several occasions over nearly a year (Tr. 286-319), diagnosed lumbosacral spondylosis and degeneration of the lumbar intervertebral disc (Tr. 321). He based these diagnoses on x-ray findings indicative of facet arthropathy (Tr. 320). The doctor also noted findings of lumbar paravertebral tenderness at L2, L3, L4, and L5, and a positive lumbar facet loading test. (Tr. 321). When Aguilera subsequently manifested positive straight leg raising on the left, Dr. Hussain added a diagnosis of lumbar radiculopathy. (Tr. 315). This led to the administration o three lumbar epidurals. (Tr. 300, 304, 311). Additionally, Dr. Tolla administered a nerve conduction study that demonstrated mild motor neuropathy in both lower

extremities.  (Tr. 391). According to Aguilera, these objective tests and findings confirmed that had had lower back and leg problems.

Aguilera argues that the ALJ mischaracterized the initial examination by Dr. Hussain as "normal," when in fact there were a significant number of positive findings, all confirmed by x-ray.  (Tr. 24).  Aguilera maintains that the ALJ ignored the positive findings, and that his straight leg raising eventually became positive.  (Tr. 290-291, 294, 307, 314, 317).

In addition, Dr. Tolla, who saw Aguilera on several occasions over the course of a year (Tr. 365-378), diagnosed carpal tunnel syndrome on plaintiff's first visit, and ultimately confirmed it with nerve conduction testing in June 2015. (Tr. 386).  According to Aguilera, the ALJ erroneously suggested that the nerve conduction study documented only mild carpal tunnel syndrome.  (Tr. 24).  He posits that the ALJ may have read too much into this recitation from Dr. Tolla's records: "EMG/NCV: Mild PN, Carpal tunnel syndrome, EMG (normal)."  (Tr. 374).  The ALJ may have believed that both the "PN," peripheral neuropathy, and carpal tunnel syndrome were mild.  According to Aguilera, this was not the case as his carpal tunnel syndrome was confirmed on testing of the upper extremities, and the modifier "mild" was not used: "Nerve conduction studies of the right upper extremity compatible with Carpal Tunnel Syndrome."  (Tr. 386).  The neuropathy, or PN, was noted on a study of plaintiff's lower extremities, and only then was the

result characterized as "mild": "Nerve Conduction studies of both lower extremities compatible with bilateral mild Motor Neuropathy."  (Tr. 391).

Aguilera contends that the ALJ's error was significant, since the ALJ's RFC assessment thereafter ignored medical evidence as to all non-mental impairments. After discussing Aguilera's testimony concerning all his impairments (Tr. 28), the ALJ went on to summarize the medical record to the complete exclusion of any physical impairment.  (Tr. 28-30).  Accordingly, Aguilera argues that the failure to deem plaintiff's physical/medical impairments severe has therefore foreclosed their consideration altogether and is not a harmless error.

In response, the Commissioner maintains that the ALJ's decision that Aguilera's physical impairments were non-severe is supported by substantial evidence because he failed to show how they significantly impacted his ability to work. The Commissioner also maintains that Aguilera's challenge to the ALJ's step-two finding is "misguided," and "legally irrelevant" since the ALJ moved past that step in the instant case.  *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).   Thus, the Commissioner's primary argument is that Aguilera cannot show that his back pain and carpal tunnel affected his ability to work.  According to the Commissioner, the ALJ considered the medical evidence in the record concerning Aguilera's back pain and carpel tunnel in concluding that they are not severe impairments.

The Commissioner gives several examples of this considerations. For instance, the ALJ discussed plaintiff's treatment with M.N. Khan M.D. in November and December 2014 for back pain and stiffness. (Tr. 23, 279). Dr. Khan diagnosed lumbago, rule out spondylitis and referred Aguilera to a pain specialist because he was not obtaining relief from non-steroidal anti-inflammatory drugs. (Tr. 23, 280). When Aguilera later followed-up, the lumbago diagnosis remained but Dr. Khan ruled out ankylosing spondylitis.

The ALJ also reviewed plaintiff's treatment with Mazher Hussain, M.D. for low back and left hip pain in June of 2015 (Tr. 23, 319-321). Aguilera complained to Dr. Hussain that his pain was gradually getting worse; he had not received injection therapy or physical therapy – instead only treating with prescribed medications. The ALJ noted plalintiff's reports of pain to Dr. Hussain and observed that Hussain's examination revealed tenderness at L2, L3, L4 and L5, as well as a positive facet loading test and a negative straight leg raise test. (Tr. 24, 321). Nevertheless, Aguilera's motor strength and muscle tone in his arms and legs was normal as was the remainder of the examination. As a result, Dr. Hussain prescribed Mobic and instructed Aguilera to continue to use Norco. He also ordered an MRI and recommended back exercises. *Id.*

Continuing, the Commissioner points out that the ALJ's discussion includes the observation that plaintiff repeatedly declined medial branch block injections in

July and August 2015.  At the time, Aguilera indicated that physical therapy and Norco were providing relief.  (Tr. 24, 313, 316).  He received epidural injections in September and December 2015, and again in April 2016; he indicated that the injections helped "a lot" for two to three weeks.  (Tr. 24, 299-300, 306, 310-311).  The record also reflects significant improvement after the April 2016 injection for about a week and tolerable pain thereafter with continued use of prescribed medication.

The ALJ also discussed Aguilera's symptoms and treatment for carpel tunnel, noting that plaintiff complained of shooting pain traveling from his hands up to his shoulders along with frequent headaches and difficulty sleeping.  (Tr. 24, 365).  Aguilera treated with neurologist Bharat Tolla, M.D., ranking his pain at 8-10/10 in April 2015.  *Id.*  Dr. Tolla's records show that plaintiff's neurological examination was within normal limits with no weakness or atrophy in any of his four extremities, normal deep tendon reflexes in all four extremities with negative Hoffman's sign, normal sensation, and normal tandem gait with the ability to walk on toes and heels. (Tr. 24, 366-367).  Dr. Tolla prescribed several medications after assessing carpel tunnel syndrome and chronic cervical and lumbar pain, rule out degenerative disc disease and peripheral neuropathy.  The ALJ noted that in June 2015 plaintiff's complaints and exam remained much the same, but his nerve conduction study revealed mild motor neuropathy in both lower extremities and

13

carpel tunnel in the right upper extremity. (Tr. 391, 386). The ALJ observed that despite the above-referenced findings, plaintiff's physical exams were essentially within normal limits. (Tr. 25).

Given the facts that the ALJ discussed the objective medical evidence and there is no opinion evidence establishing work-related limitations, the Commissioner suggests that Aguilera is really asking the Court to reweigh the evidence. The Commissioner argues that none of the evidence Aguilera points to establishes either that the ALJ erred or that his back pain caused limitations in his work-related abilities, particularly since diagnoses alone do not establish either disability or severity under the Act. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). According to the Commissioner, even the diagnosis of lumbar radiculopathy from Dr. Hussain, which the ALJ did not explicitly discuss in his findings, is nothing more than a label and it cannot meet Aguilera's burden to establish severity at step two of the sequential evaluation. Indeed, the ALJ did not dispute that Aguilera's back pain was medically determinable, only that it was not severe.

The Commissioner also points out that Aguilera's only argument with respect to his diagnosis of carpal tunnel syndrome is that the ALJ "may have" impermissibly added the modifier "mild" to qualify his carpal tunnel syndrome, when the record may have only shown that he was diagnosed with the impairment,

14

not that it was classified as "mild."  The Commissioner stresses that a diagnosis of carpal tunnel syndrome alone does not establish work-related limitations. Further, at each of his neurological appointments with Dr. Tolla, Aguilera's physical examinations were normal; nothing in the record supports that the impairment limited his ability to work.  (Tr. 369-70, 372-73, 375, 377).

    2.    Analysis

At step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment meet the twelve-month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . . , or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in

the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

In *Higgs v. Bowen*, the Sixth Circuit found that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  880 F.2d 860, 862 (6th Cir. 1988).  The *Higgs* court observed that "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis."  *Id*.  Courts have observed the requirement to be a *de minimis* hurdle for the plaintiff.  *Id*.  But the court also recognized that "Congress has approved the threshold dismissal of claims obviously lacking medical merit...."  *Id*.  That is, "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Id*. at 863.  The *Higgs* court approved of that practice and affirmed dismissal because the record contained no objective medical evidence to support the plaintiff's claims of severe impairment.

The *Higgs* court observed that "[t]he mere diagnosis of [an ailment], of course, says nothing about the severity of the condition."  *Id*; *see also Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) (citations omitted) (Nonetheless, not all impairments are severe: "The mere existence of ... impairments ... does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time.").

As observed in *Sponsler v. Comm'r of Soc. Sec.*, 2018 WL 1173019, *8 (N.D. Ohio Mar. 6, 2018), since *Higgs*, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment if the medical evidence does not contain information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition.  *See e.g*., *Long v. Apfel*, 1 Fed. Appx. 326, 332 (6th Cir. 2001).  While it is accurate that the medical records and physician reports do not impose any physical restrictions on Aguilera based on his back pain and carpel tunnel, there is medical evidence documenting the intensity, frequency, and duration of the pain associated with his conditions.  A nerve conduction study showed mild motor neuropathy in both lower extremities and carpal tunnel of the right upper extremity.  (Tr. 24, 374, 386, 391).  Aguilera had positive physical examinations reflecting tenderness at left hip joint and limited range of motion of left hip, tenderness at L2, positive straight leg raising.  *Id*.; *see also* (Tr. 25, 369-60, 372-73, 375, 377-78).  Aguilera regularly

17

reported constant hip and back pain levels of 8/10 and 9/10.  (Tr. 296, 307, 314,

317, 320).  In relation to his lumbar radiculopathy, he was referred to a pain

specialist and received three lumbar epidurals.  (Tr. 300, 304, 311).

The Commissioner correctly points out that the ALJ is afforded a 'zone of

choice" within which to make his findings, and this Court may not disturb those

findings so long as there is substantial evidence to support them.  Nevertheless, in

view of the objective findings that plaintiff has highlighted – particularly relating

to his back impairment,  plaintiff's contention that his physical impairments cannot

be characterized as "totally groundless" or failing to meet the *de minimis* standard

embraced  in *Higgs* is understandable.  In the end, the question of whether any

such error occurred is academic as plaintiff still fails to satisfy his burden to

demonstrate disability, as discussed more fully below.

To the extent there may have been any step two error, it presents no cause

for remand under the circumstances presented.  Sixth Circuit precedent establishes

that failure to find an impairment severe at step two of the sequential analysis is

not reversible error if the ALJ found another impairment severe and thus continued

with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584

(6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the

ALJ continues with the remaining steps, any error at step two is harmless, so long

as the ALJ considered the effects of all medically determinable impairments,

including those deemed nonsevere.  *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at

*4 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that

additional impairments are severe is not in itself cause for reversal.  But this is true

only so long as the ALJ considers the effects of all of the claimant's medically

determinable impairments, both those he deems severe and those not severe.")

(internal quotation marks omitted).  Indeed, plaintiff has acknowledged as much.

(Dkt. 15, Pg ID 464).

Here, the ALJ found other impairments to be severe and continued through

the five-step analysis.  He extensively discussed and considered all the medical

evidence and testimony relating to Aguilera's back pain and carpal tunnel

syndrome.  Aguilera appears to equate "consideration" of non-severe impairments

at subsequent steps as requiring the ALJ to include limitations in the RFC based on

those non-severe impairments.  The ALJ's decision reveals that he did consider the

effects of these impairments throughout the five-step analysis, as evidenced by the

extensive discussion of the pertinent medical evidence and testimony.  *Jackson v.

Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one

severe impairment at step two, the failure to identify additional severe impairments

at step two was harmless error in case where the ALJ considered all of the

plaintiff's impairments at other steps as demonstrated by discussion of testimony

and medical history.).

Significantly, there is no medical opinion in the record assessing any functional limitations caused by back pain or carpel tunnel, which also renders any step two error harmless. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec.*, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*,  2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Caldwell v. Berryhill*, 2017 WL 975371, at *5 (M.D. Tenn. Mar. 14, 2017) ("Indeed, the mere presence of neck pain—even if it is supported by objective testing—does not, without more, establish that Caldwell was limited by it.").  Where an impairment is not associated with any functional limitations in the record, failure to discuss the impairment after Step Two of the sequential analysis is harmless.  For instance, in *Smith v. Comm'r of Soc. Sec*, the ALJ determined that the plaintiff's brain lesions were nonsevere based on a finding that the lesions had not changed since 2008, and there was no evidence that the plaintiff was limited by any neurological disorder. *Smith,* 2016 WL 423757, at *6 (E.D. Mich. Jan. 12, 2016), *report and*

*recommendation adopted*, 2016 WL 409316 (E.D. Mich. Feb. 3, 2016).  The ALJ did not discuss the plaintiff's brain lesions at any point in the decision after Step Two.  *Id.*  Nevertheless, the court held that the ALJ's error was harmless because the plaintiff's neurologist did not diagnose a neurological disease or assess functional limitations as a result of the brain lesions.  *Id.*

In this case, Aguilera's physicians did not note any functional limitations. (Dkt. 15, Pg. ID 464).  Examinations revealed normal motor strength and muscle tone.  (Tr. 24, 321).  Treatment was conservative, including pain medication, recommendation of back exercises.  *Id.*  While Aguilera did receive some back injections, he often declined further injections, noting that medication and physical therapy were helping his pain.  (Tr. 24, 316, 313).  He reported significant improvements when he did have the injections and indicated tolerable pain control with his medications.  (Tr. 24, 306, 289, 292-93, 295-96, 304).  A nerve conduction study showed mild motor neuropathy in both lower extremities and carpal tunnel of the right upper extremity.  (Tr. 24, 374, 386, 391).  Despite continuing complaints of pain, Aguilera continued to have fairly minor positive physical examinations (tenderness at left hip joint and limited range of motion of left hip, tenderness at L2, positive straight leg raising) and was primarily treating with medication management.  *Id.*; *see also* (Tr. 25, 369-60, 372-73, 375, 377-78). Again, his physicians did not give opinions on his residual functional capacity or

otherwise opine regarding if or how Aguilera's conditions impacted his ability to perform any basic work functions.  While there is objective medical evidence in the form of testing and clinical findings to support Aguilera's diagnoses, the "[t]he mere diagnosis of [an ailment], of course, says nothing about the severity of the condition."  *Id*; *see also Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) (citations omitted) (Nonetheless, not all impairments are severe: "The mere existence of ... impairments ... does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time.").  Aguilera's charge that the ALJ may have misread some of the medical evidence does not change the fact that the record is devoid of any medical opinion suggesting limitations associated with his physical impairment. Accordingly, the undersigned concludes that the medical records do not establish functional limitations based on his back pain and carpel tunnel.  As such, any error at Step Two is harmless and remand would be futile.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 18, 2019          s/Stephanie Dawkins Davis
                                 Stephanie Dawkins Davis
                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 18, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov